EDWARD DONAHUE, P.P.A.

vs.

ALFRED M. PEASE

Court of Common Pleas     Hartford County     File #36750

Present:   Hon. THOMAS J. MOLLOY, Judge.

Cole & Cole,                          Attorneys for the Plaintiff.

Robert L. Halloran,                   Attorney for the Defendant.

## MEMORANDUM FILED JANUARY 21, 1938.

MOLLOY, J. On March 20, 1937, during the daytime, the plaintiff, a boy about sixteen years of age, who was a house-to-house peddler, was bitten by the defendant's German police dog while leaving the premises of the defendant. The boy had gone to the kitchen door of the defendant's house, which is about 50 feet from the highway, and having been told by a maid that none of his merchandise was wanted, was proceeding easterly on the driveway of the premises toward the highway, Bloomfield Avenue, in the town of West Hartford, and had reached a point about 20 feet from the house, when the defendant accompanied by the dog, was leaving the house of an adjoining neighbor on the south, and was proceeding across the lawn toward her house. The dog seeing the boy dashed toward him. At this point there is a conflict as to just what happened. The plaintiff says he was knocked down and bitten. The defendant and her witnesses deny this. In any event the boy was still on the premises of the defendant. He had been there on two prior occasions soliciting business and had sold some of his wares on one of these times. It is clear he had not, on the occasion in question, incited, provoked or otherwise molested the dog, nor the owner, nor the servants on the premises.

The boy had no license to peddle as required by an ordinance of the Town of West Hartford.

This action is based upon **section 3357 of the General Statutes, Revision of 1930,** which provides for liability for damage

done by a dog to the body or property of any person ". . . . except when such damage shall have been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort".

It is the contention of the defendant that this plaintiff inasmuch as he had no license to peddle in West Hartford as required by "An ordinance relating to the licensing of peddlers and solicitors in said town", was a trespasser within the meaning of that word as used in section 3357 referred to, and so cannot recover for any injuries allegedly sustained by him.

It is of course the duty of the plaintiff to prove not only that he was injured by a dog owned by the defendant but that he is not within any of the exceptions of said statute.

That the dog was owned by the defendant is not disputed. That the plaintiff was bitten and injured by the dog, and if so, to the extent claimed, is denied by the defendant. I am convinced the plaintiff was bitten by the defendant's dog. There is some question that he was injured to the extent he claims. But the real serious question is the legal one as to whether or not he was a trespasser such as would defeat a recovery by him under the exceptions of section 3357.

"Where an exception forms an integral part of that portion of a statute which creates a right, it becomes a limitation upon that right, and a plaintiff, to avail himself of the benefit of the statute, must show that he comes within the limited class for whose benefit the right was established, the burden of proof in this respect being upon him." **Goodwin vs. Giovenelli, 117 Conn. 103, 107.**

It is the contention of the plaintiff that he was not a trespasser; that at most his presence on the defendant's premises could be considered possibly as a technical trespass—trespass **quare clausum fregit,** which is not the kind of a trespass, so the argument runs, contemplated by the statute under which this action is brought.

Now, there is no question but that the plaintiff was conducting himself in an orderly manner, and there was nothing about his action to indicate that his purpose was to commit a felony or any other unlawful action; nor is there any claim that he did anything calculated to provoke the dog to attack him. The boy did nothing to indicate that the defendant's premises or family was in need of protection.

To me it seems that the plaintiff was at most a technical trespasser. Indeed, it is not without significance that on neither of the two prior occasions nor on the one in question was the plaintiff told by the defendant or her servants not to come upon the premises again. It would seem to me that it might well be argued that he had an implied invitation or license to return again to display his wares. The fact that the ordinances of the Town of West Hartford require a peddler to have a license in order to solicit orders or sell merchandise does not necessarily make such a peddler without such a license a trespasser. How can anyone confer on a peddler the right to enter upon my land? The peddler's status of being a trespasser or a non-trespasser is fixed by the fact of whether or not he has an express or implied permission, invitation or license to come upon my property.

But assuming the plaintiff is a technical trespasser, was he committing a trespass within the meaning of section 3357?

**Woolf vs. Chalker, 31 Conn. 121,** one of the earliest of our dog cases, is a case which throws considerable light on the rights of dog owners and also their liabilities, although it was decided prior to the statute as presently worded. The Court held that although the plaintiff was a technical trespasser the owner was nevertheless liable unless the dog did damage while protecting his master's premises against a felony.

**Kelley vs. Killourey, 81 Conn. 320,** held that a literal interpretation of the former statute was not the true intent and meaning of the law. It inferred certain exceptions, one of which was injuries done by a dog in the protection of his master's premises against the perpetration of a felony.

**Bradley vs. Sobolewsky, 91 Conn. 492,** was a case where an employee of a gas company while on the premises of the defendant, who was one of its customers, to inspect a gas range which was supposed to be out of order, was attacked and bitten by the defendant's dog. The defense was that the employee was a trespasser. The Court held that inasmuch as the defendant's application for gas contained his assent to the rules and regulations of the company providing for such entry and inspection, the plaintiff was not a trespasser, and said (p. 495): "We conclude that the plaintiff was upon the defendant's premises by virtue of an express license". Defendant argues that the Court held by inference, at least, that if there had been no assent to the rules and regulations of the

company providing for such entry, then the man would have been a trespasser.

But when **Dorman vs. Carlson, 106 Conn. 200,** is considered, especially its interpretation of **Kelley vs. Killourey, supra,** the conclusion is reasonable, that a mere technical trespass on the defendant's premises is not a defense within the meaning of the exception in the statute as it now stands.

> "The primary legislative purpose, as we conceive it, was to conform the statute to the interpretation placed upon it by this court and to include every form of exception within its general terms, trespass or tort. The language of the exception is comprehensive; interpreted literally it might include every kind of trespass or tort done to any person or property at any time. Such an interpretation would lead to results which surely were not in the legislative contemplation. The trespasses and torts which the framers of this exception had in mind were those which were committed upon the person or property of the owner or keeper, or his family, and other torts of a like character, and which the dog, with his characteristic loyalty, would instinctively defend and protect, and those torts committed upon the dog to which we referred in **Kelley vs. Killourey, supra,** as likely to excite a dog to the use of its natural weapons of defense. . . . Whether the injury caused by the dog occurred in private grounds or on the public highway is not the determining factor of liability, but whether it was inflicted upon one at the time he was committing a trespass or tort." (p. 202.)

**Granniss vs. Weber, 107 Conn. 622,** reaffirms this position regarding trespass. This case also holds that the conduct of the dog in running into the highway after an automobile "cannot fairly be assigned to the category of innocent acts; it was palpably voluntary and actuated by vicious or mischievous propensities, for the injurious results of either of which our statute gives redress." (p. 624.)   **Woolf vs. Chalker, supra.**

In **Goodwin vs. Giovenelli, supra,** the Court said (p. 106):

> ". . . . the legislative intent required that the terms trespass and tort referred to be interpreted to mean those which were committed upon the person or property of the owner or keeper or of his family, and other torts of a like character which the dog would instinctively defend and protect, including those committed upon the dog it-

self, which were likely to incite it to attack."

It seems to me that our Supreme Court interprets the words of the statute "committing a trespass or other tort" as "confined to trespasses or torts committed upon the person or property of the owner or keeper or his family, which the dog would instinctively defend and protect, other torts of like nature, and torts against the dog itself of a nature calculated to incite it to defensive action by use of its natural weapons of defense." **McCarthy vs. Daunis, 117 Conn. 307, 310.**

Where a statute imposed liability "except when the party is doing an unlawful act" it was held that "the unlawful act that will defeat liability must be one that directly contributes to the injury sustained; otherwise, it is no defense." **Beckler vs. Merringer (Iowa), 109 N. W. 185; 3 C. J. S. 1258.**

This plaintiff had been on the defendant's premises twice before soliciting business. Had he been a total stranger and was going on the premises in the night season, it might be that the attack by the dog would be excusable, as then the circumstances might naturally incite the dog to a defensive attitude.

In the instant case the plaintiff was peacefully and quietly walking off the defendant's land until attacked from the rear by the dog. The plaintiff was not walking toward the owner. Indeed, he was approximately 100 feet away from her. The plaintiff was doing no overt or hostile act as would be likely to arouse the protective instincts of the dog and incite it to attack. It would seem to me that the ordinary experiences and the usual conduct expected of a dog would require some act on the part of the trespasser such as would mark him as more than a technical trespasser. He must be characterized as an intruder or one bent on apparent harm to the person or property of the master. The dog dashed at the boy, contrary to and in spite of, the calls of the defendant. There is nothing in the case to warrant a conclusion that the plaintiff was guilty of such an act which the dog with his characteristic loyalty would instinctively defend against.

The plaintiff was bitten on the calf of his right leg, six inches below the knee, receiving a one-half inch lacerated wound. It was cauterized. It is very questionable that he was thrown to the ground at the time he was bitten. His medical bill was $27.00. His average profits in his peddling business were nine to eleven dollars a week. His work re-

quires him to be constantly on the walk. By reason of his injury and the character of his work he claims to have been unable to work for four weeks.

The issues are found and judgment is directed for the plaintiff to recover of the defendant $200.